**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ELIZABETH A. P.,**

    **Plaintiff,**

  v.

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

**5:21-cv-603 (GLS)**

_____

**APPEARANCES:**     **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Olinsky Law Group      HOWARD D. OLINSKY, ESQ.
250 South Clinton Street
Suite 210
Syracuse, NY 13202

**FOR THE DEFENDANT:**
HON. CARLA B. FREEDMAN      AMELIA STEWART
United States Attorney      Special Assistant U.S. Attorney
100 South Clinton Street
Syracuse, NY 13261

Ellen Sovern
Regional Chief Counsel
Office of Regional Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe**
**Senior District Judge**

## **MEMORANDUM-DECISION AND ORDER**

### I. Introduction

Plaintiff Elizabeth A. P. challenges the Commissioner of Social Security's denial of Social Security Disability Insurance Benefits (DIB), seeking judicial review under 42 U.S.C. § 405(g).  (Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Elizabeth's arguments, the Commissioner's decision is affirmed and the complaint is dismissed.

### II. Background

Elizabeth applied for DIB on January 8, 2019, alleging a disability beginning on January 1, 2018.  (Tr.[1] at 141, 214-29.)  When her application was denied, (Tr. at 142-44), she requested reconsideration, (Tr. at 153), which was denied (Tr. at 154-64).  Elizabeth then requested a hearing before an Administrative Law Judge (ALJ), (Tr. at 167-68), which was held on May 14, 2020, (Tr. at 41-97).  On August 13, 2020, the ALJ issued an unfavorable decision denying the requested benefits, (Tr. at 10-

---

[1] Page references preceded by "Tr." are to the administrative transcript.  (Dkt. No. 16.)

26), which became the Commissioner's final determination upon the Appeals Council's denial of review, (Tr. at 1-4).

Elizabeth commenced the present action on May 25, 2021, by filing her complaint, wherein she seeks review of the Commissioner's determination. (Compl.) Thereafter, the Commissioner filed a certified copy of the administrative transcript. (Dkt. No. 16.) Each party filed a brief seeking judgment on the pleadings. (Dkt. Nos. 20, 21.)

### III. Contentions

Elizabeth contends that the ALJ's residual functional capacity (RFC) determination "is not supported by substantial evidence[2] because she improperly evaluated the opinion of consultative examiner Richard Weiskopf, M.D." (Dkt. No. 20 at 1.) The Commissioner maintains that the ALJ properly evaluated Dr. Weiskopf's opinion and that the ALJ's RFC is supported by substantial evidence. (Dkt. No. 21 at 3-12.)

---

[2] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir.1990) (internal quotation marks and citations omitted).

## IV. Facts

The court adopts the parties' factual recitations to the extent they are consistent with the statement of facts contained in the ALJ's decision and supported by the medical record. (Tr. at 1-26; Dkt. No. 20 at 1-8; Dkt. No. 21 at 1-2.)

## V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g) is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-*3 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. Dr. Weiskopf's Medical Opinion

Elizabeth asserts that the ALJ's RFC determination was legally erroneous and not supported by substantial evidence because she failed to evaluated the medical opinion of Dr. Weiskopf "in accordance with the proper legal standards." (Dkt. No. 20 at 10.) Specifically, Elizabeth

4

argues that the ALJ did not adequately articulate the supportability and consistency factors and ignored evidence in the record that supported Dr. Weiskopf's findings.  (*Id.* at 9-13.)  The Commissioner counters that the ALJ did discuss the necessary factors with respect to Dr. Weiskopf's opinion, and, even if the ALJ committed legal error, such error was harmless because the ALJ's RFC determination was still supported by substantial evidence.  (Dkt. No. 21 at 7-12.)

     For claims filed after March 27, 2017, the "ALJ must articulate in . . . her determination how persuasive . . . she finds all of the medical opinions."  *Daniel E. v. Kijakazi*, No. 6:20-CV-1270, 2022 WL 602533, at *4 (N.D.N.Y. Mar. 1, 2022) (citing 20 C.F.R. § 416.920c(b), which parallels 20 C.F.R.  § 404.1520c).  In fullfilling this obligation, an ALJ will consider the following factors: (1) "supportability"; (2) "consistency"; (3) "relationship with the claimant," which includes the "length of the treatment relationship," the "frequency of examinations," the "purpose" and "extent of the treatment relationship," and the "examining relationship"; (4) "specialization"; and (5) any "other factors that tend to support or contradict a medical opinion or prior administrative medical finding."  20 C.F.R. § 404.1520c(a), (c).  An ALJ must "explain how [he] considered the

supportability and consistency factors" in his decision and "may, but [is] not required to, explain how [he] considered the [additional] factors." 20 C.F.R. § 404.1520c(b)(2).  Even if an ALJ commits procedural error by failing to explain how her or she considered the supportability and consistency factors, the ALJ's decision can be affirmed "if a searching review of the record assures [the court] that the substance of the [regulation] was not traversed."  *Loucks v. Kijakazi*, 2022 WL 2189293, at 2 (2d Cir. 2022) (internal quotation marks and citations omitted).

> Here, the ALJ determined that Elizabeth can
>
> perform light work . . . except she can occasionally stoop, balance, crouch, crawl, kneel and climb stairs and ramps but cannot climb ladders, ropes or scaffolds or work at unprotected heights; cannot tolerate concentrated exposure to respiratory irritants, extreme heat or cold, humidity or wetness; can work in a moderate noise environment as that term is defined in the Selected Characteristics of Occupations; can frequently reach and handle, finger and feel; can tolerate occasional contact with supervisors, co workers and the public; can make decisions directly related to her work and tolerate minor changes; can work at a consistent pace but not at a fast production rate pace such as would be experienced in assembly line type of work; and can perform simple and detailed tasks but cannot perform highly complex tasks, such as analyzing compiled data, directing or planning other's activities, or supervising employees.

(Tr. at 15-16.)  In reaching this determination, the ALJ found the opinion of Dr. Weiskopf, a consultative examiner, to be "minimally persuasive."  (Tr.

6

at 22.) Dr. Weiskopf opined that Elizabeth had no limitation with sitting, mild limitation with standing, moderate limitation with walking, and moderate to severe limitation with bending, lifting, climbing, and carrying. (Tr. at 1358.) Additionally, Dr. Weiskopf reported that Elizabeth had "good use of her right hand" but "[t]he use of her left hand [wa]s severely compromised due to her inability to flex her fingeres and extend her fingers, and she ha[d] severe decrease in finger dexterity." (Tr. at 1368.)

      The ALJ did not err with respect to her evaluation of Dr. Weiskopf's opinion. While Elizabeth contends that the ALJ failed to discuss the factors of supportability and consistency, (Dkt. No. 20 at 9-13), she is mistaken. The ALJ discussed that Dr. Weiskopf's opinion was "supported . . . with a one-time examination of" Elizabeth and that during this examination Elizabeth "exhibited significant deficits that are not replicated in the majority of other physical examinations" in the record. (Tr. at 22.) The ALJ further explained that Dr. Weiskopf's opinion of Elizabeht's limitations were not consistent with Elizabeth's "medical imaging, response to surgical treatment, lack of difficulty standing or walking during most examinations, lack of range of motion deficits during most examinations, and varied activities of daily living, many of which involve

7

standing, walking, and good use of the hands" and that Dr. Weiskopf's opinion was inconsistent with the evidence in the record, including the opinions of doctors D. Chen and J. Rosenthal.  (Tr. at 23.)  Accordingly, the ALJ's RFC determination is free from legal error.

Even assuming that the ALJ's discussion of the supportability and consistency factors was lacking, her determination that Elizabeth can perform light work is still supported by substantial evidence.  The record indicates that, despite her impairments, Elizabeth can perform "many activities of daily living," including exercising six to seven times per week, driving up to two hours, cooking, and "light general cleaning."  (Tr. at 20-21, 296-98, 814, 1213, 1215, 1481,1581, 1660, 1664, 1667.)  Additionally, the ALJ did not ignore the fact that Elizabeth still experienced pain due to her impairments, mostly in her left side and hand, but noted that Elizabeth did not demonstrate "on-going reaching deficits, atrophy, abnormal fingering motions, or clawing of her hand," ultimately concluding that Elizabeth could perform light work and can frequently reach and handle, finger, and feel.  (Tr. at 16, 19 (citing Tr. at 783-85, 787-91, 814, 817)); *See Rebecca S. L. v. Comm'r of Soc. Sec.*, No. 5:21-CV-1212, 2022 WL 19073804, at * 6, 8 (N.D.N.Y. Dec. 6, 2022) (affirming the ALJ's

determination even though the ALJ did not explicitly mention the supportability factor of the medical opinion at issue but his analysis detailed the doctor's opinion, noting it was based on a one-time examination and the ALJ's discussion of the consistency factor "clearly supports the ALJ's overall finding of persuasiveness.")  Accordingly, any legal error here was harmless.[3]

## B.   Remaining Findings and Conclusions

After careful review of the record, the court affirms the remainder of the ALJ's decision, as it is supported by substantial evidence and free from legal error.

## VII.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the Commissioner's motion for judgment on the pleadings (Dkt. No. 21) is **GRANTED**; and it is further

---

[3]  Elizabeth also argues that the ALJ's failure to discuss the necessary factors resulted "in an incomplete hypothetical question posed" to the vocational expert, and, as such, the ALJ's error was not harmless. (Dkt. No. 20 at 13.)  Because the ALJ's RFC determination and analysis of Dr. Weiskopf's opinion was free from legal error, the ALJ was not required to "include . . . limitations for which [s]he had reasonably rejected" in her hypothetical.  *Priel v. Astue*, 453 F. App'x 84, at 87-88 (2d Cir. 2011).

**ORDERED** that the decision of the Commissioner is **AFFIRMED**; and it is further

**ORDERED** that the complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that Elizabeth's motion for judgment on the pleadings (Dkt. No. 20) is **DENIED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

March 31, 2023
Albany, New York

*Gary L. Sharpe*
Gary L. Sharpe
U.S. District Judge